UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 18-194 (ADM/DTS) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| KENNETH DAVON LEWIS, | |
| Defendant. | |

Thomas Calhoun-Lopez, Assistant U.S. Attorney, U.S. Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff

Kevin Riach, Esq., Fredrikson & Byron, PA, 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for Defendant

## INTRODUCTION

Defendant Kenneth Lewis moves to suppress statements he made to law enforcement during a custodial interrogation on April 19, 2018, alleging they were obtained in violation of his Fifth Amendment rights. Motion, Docket No. 16. For the reasons stated below, the Court recommends that Lewis's motion to suppress be denied.

## FINDINGS OF FACT

On April 18, 2018, the day of his arrest, Lewis made statements to law enforcement while being transported from the scene. The Government contends the statements are admissible but has agreed not to use them at trial. Motion Hearing (Oct. 24, 2018) Tr. 5-6, Docket No. 33. Therefore, the Court will deny as moot Lewis's motion to suppress the April 18, 2018 statements.

On April 19, 2018 Detective Autumn Nelson and Detective Tessa Villegas questioned Lewis while he was in custody at the Anoka County Jail. Gov't Exs. 1, 2.[1] After a few questions about administrative matters, he was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Gov't Ex. 2 at 2. Lewis said he understood those rights. *Id.* Lewis asked them to explain the charges against him, which they did. *Id.* at 3-5. Law enforcement said the first-degree assault charge alleged that Lewis assaulted a police officer at the scene. *Id.* at 4. The conversation went back and forth as Lewis challenged the facts and basis for bringing assault or attempted assault charges. *Id.* at 3-5.

At certain points Lewis stated "I'm done talking," "I'm going, I'm going, I'm going," and "stop, stop." That part of the interview unfolded as follows:

Defendant:   and you said it was first degree assault [Gov't Ex. 1 at 7:11]

Nelson:   yeah

Defendant:   now can you continue to explain because a first-degree assault does not un happen with anybody with no one hand behind his back.

Nelson:   Depends on what's in that other hand, which is where your problem is.

Defendant:   And what was that?

Nelson:   The gun that you had.

Defendant:   Pfff all right yeah, we got, we definitely (inaudible) what gun?

Nelson:   (inaudible)

---

[1] Gov't Ex. 1 is a CD of the audio recording of the interview. Gov't Ex. 2 is a transcript of the recorded interview. It is a rough draft, not an exact transcription, used for reference purposes for the parties, the Court, and the witness, Detective Autumn Nelson, at the October 24, 2018 hearing. Hrg Tr. 10-12, Docket No. 33. Both exhibits were received into evidence at the hearing. *Id.* at 10, 12.

Defendant:   What gun?

Nelson:      All right,

Defendant:   What gun?

Villegas:    The gun that the[y] found that came out of the pile when you were wrestling with everybody.

Defendant:   Mmm, so (inaudible) okay check, check this out

Villegas:    Can you sit back down please?

Defendant:   Even, even, even, even, even, even

Villegas:    If you wanna talk I'm gonna have (inaudible/talking over) again.

Defendant:   Even though, you know **I'm done talkin'** 'cuz you just sound like uh you look crazy as motherfucker.  [Gov't Ex. 1 at 7:50]

Villegas:    Okay

Defendant:   'Cuz you know that, I don't even sound like you don't get no first-degree assault, no first-degree assault unless somebody gets damn near shot, shot

Villegas:    Which is exactly what happened . . . I'm just tellin' you that's what the reports read and you wanna tell us somethin' different, we're willing to hear it.

Defendant:   Somebody got shot?

Villegas:    Somebody attempted, that's what she was saying, attempted assault on a peace officer.

Defendant:   Y'all had your body, they had their body cams on, didn't it?

Nelson:      Coon Rapids doesn't carry body cams.

Defendant:   And they don't (inaudible) either though huh?

Gov't Ex. 2 at 5 (emphasis added).

Villegas:    Nope we have witnesses.

3

Defendant: Sayin' what, pff?  So, anything else you wanna do, y'all wanna tell me somethin' else?

Nelson: (inaudible/talking over) we were trying to give you an opportunity

Defendant: Ain't no opportunity (inaudible/talking over) that's, if that's what y'all runnin' with, good job cuz **I'm going, I'm going, I'm going** so [Gov't Ex.1 at 8:50]

Nelson: Here's, okay

Defendant: I ain't

Villegas: Here's the thing though

Defendant: if you would a came, I mean like that, **come on man, stop, stop** [Gov't Ex. 1 at 8:58]

Villegas: But let's look at the reality of the circumstances, okay here you are

Defendant: the reality is first degree assault ain't gonna stand up period and I sit here till whenever

Gov't Ex. 2 at 6 (emphasis added).

The interview continued and, at approximately 57 minutes into the recorded interview, Lewis stated, "I'm not answering nothing like that so we . . . and to this, this report here and my lawyer." Gov't Ex. 2 at 36. The Government states that it will not use this statement or any statement made thereafter in the interview.  Gov't Br. 4, Docket No. 22.

The interview lasted approximately one hour.  Gov't Ex. 1.

## CONCLUSIONS OF LAW

A person facing custodial interrogation must be informed that, under the Fifth Amendment, "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning

4

if he so desires." *Miranda*, 384 U.S. at 478-79. Statements obtained during a custodial interrogation without proper warning and waiver of these rights are not admissible against the defendant. *Id.* If a person "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473-74. The invocation of the right to remain silent must be clear and unambiguous. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).

First, Lewis moves to suppress pre-*Miranda* statements he made during the approximately three minutes at the beginning of the April 19, 2018 interview before he was advised of his *Miranda* rights. Motion ¶ 2, Docket No. 16; Lewis Br. 7, Docket No. 28; Gov't Ex. 1 (Lewis advised of *Miranda* rights at 3:16 of audio recording). Lewis offers no specific arguments to support suppressing any statement made during this time. The only events that occurred were the collection of a DNA sample and confirmation of basic administrative information. Gov't Ex. 2 at 1-2. The DNA swab was taken pursuant to a warrant, and the other questions involved whether identification information such as date of birth was correct. *Id.* The questions were not relevant to the substantive offense charged and were not "interrogation" under *Miranda*. *See United States v. McLaughlin*, 777 F.2d 388, 391-92 (8th Cir. 1985).

Second, Lewis moves to suppress his post-*Miranda* statements on April 19, 2018. He contends that he invoked his right to remain silent when he said "I'm done talking," at which point the detectives were required to stop the interview; his questions to the detectives asking them to explain the charges against him did not constitute a knowing and voluntary waiver of his right to remain silent; and they violated his Fifth Amendment right to remain silent by continuing their efforts to elicit statements from

5

him, despite his repeated attempts to end the questioning when he said "I'm going, I'm going, I'm going" and "stop, stop."

A review of the record, including the audio recording of the interview, shows that Lewis's Fifth Amendment rights were not violated. Lewis said "I'm done talking." Gov't Ex. 2 at 5. The detective responded "Okay" and said nothing further. *Id.* Lewis immediately continued his end of the conversation, however, expressing skepticism about the theory and facts underlying the assault charge. *Id.* Lewis prompted the interview to continue. He asked the detectives a series of questions, they responded, and the interview continued. *Id.* at 5-6.

Although "I'm done talking" [Gov't Ex. 1 at 7:50] is an unequivocal statement, as soon as Lewis said it he immediately and spontaneously continued to talk. It is not even a matter of Lewis "re"-initiating communication with the detectives, as his communication never stopped. Lewis therefore did not clearly and unambiguously invoke his Fifth Amendment right to remain silent because he continued to talk. *See, e.g., United States v. Smith*, Criminal No. 13-20263, 2013 WL 5745133, at * 5 (E.D. Mich. Oct. 23, 2013) (although defendant said several times "I'm done talking," "that's it," "that's all I'm saying," "I'm done," he did not clearly and unambiguously invoke his right to remain silent because each time he continued talking upon his own initiative); *compare United States v. Adams*, Criminal No. 15-106, 2016 WL 385965, at * 3-4 (D. Minn. Jan. 7, 2016) (defendant who said he was "done talking" invoked his right to remain silent, and detective - not defendant - continued talking, thereby violating defendant's Fifth Amendment rights).

6

      Moreover, the Court finds that Lewis's statements, made about a minute later, that "I'm going, I'm going, I'm going" [Gov't Ex. 1 at 8:50] and "stop, stop" [*id.* at 8:58] are not clear and unambiguous statements invoking his right to remain silent. It is not clear what they mean in the context of that part of the interview.  There is no indication that "I'm going" is meant to express his desire to be taken out of the room and to end the interview. "Come on man, stop, stop" appears to be part of his ongoing commentary that the assault charge is ridiculous, as in, stop talking such nonsense:

Defendant:    Even though, you know **I'm done talkin'** 'cuz you just sound like uh you look crazy as motherfucker.

Villegas:    Okay

Defendant:    'Cuz you know that, I don't even sound like you don't get no first-degree assault, no first-degree assault unless somebody gets damn near shot, shot

\* \* \*

Defendant:    Ain't no opportunity (inaudible/talking over) that's, if that's what y'all runnin' with, good job cuz **I'm going, I'm going, I'm going** so

Nelson:    Here's, okay

Defendant:    I ain't

Villegas:    Here's the thing though

Defendant:    if you would a came, I mean like that, **come on man, stop, stop**

Villegas:    But let's look at the reality of the circumstances, okay here you are

Defendant:    the reality is first degree assault ain't gonna stand up period and I sit here till whenever

Gov't Ex. 2 at 5-6 (emphasis added).

7

These statements are skeptical and disparaging comments about the assault charge: that it's "crazy" talk, "you don't get no first-degree assault, no first-degree assault unless somebody gets damn near shot," "if that's what y'all runnin' with, good job," and "the reality is first degree assault ain't gonna stand up period." Even if that is not a correct interpretation of Lewis's words, it shows that the meaning is not so clear as to constitute an unambiguous statement invoking his right to remain silent during the interview.

Even if the Court deems "I'm done talking" to be an invocation of Lewis's right to remain silent, the record here establishes that he immediately waived that right when he spontaneously continued talking to the detectives. *Miranda* "does not impose a formalistic waiver procedure," and a suspect's course of conduct after receiving and understanding his *Miranda* rights can indicate a waiver of those rights. *Berghuis*, 460 U.S. at 385-86. Lewis engaged in a course of conduct inconsistent with a desire to exercise his right to remain silent and thereby waived that right.

Accordingly, the April 19, 2018 statements at issue were not made in violation of Lewis's Fifth Amendment rights and need not be suppressed.

## RECOMMENDATION

IT IS HEREBY RECOMMENDED that Defendant Kenneth Lewis's Motion to Suppress Statements [Docket No. 16] be DENIED as follows:

1.   The motion with respect to the April 18, 2018 statements be DENIED AS MOOT based on the Government's agreement that it will not use them at trial.

2.   The motion with respect to the April 19, 2018 statements be DENIED.

8

Dated:  December 7, 2018

                                                                           s/David T. Schultz        
                                                                           DAVID T. SCHULTZ
                                                                           United States Magistrate Judge

## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).